FILED
9/27/2021
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 82547-0-I |
| Respondent, | |
| v. | DIVISION ONE |
| JACK ROSS, | UNPUBLISHED OPINION |
| Appellant. | |

CHUN, J. — A jury found Jack Ross guilty of rape in the second degree and rape of a child in the second degree. On appeal, Ross contends that (1) the State committed prosecutorial misconduct, (2) his defense counsel rendered ineffective assistance of counsel (IAC), (3) the trial court erred by denying his motion for a mistrial, (4) insufficient evidence supports his conviction for rape in the second degree, and (5) the court inadvertently imposed discretionary legal financial obligations (LFOs) on him. For the reasons discussed below, we remand for the trial court to strike the supervision fees and affirm in all other respects.

I. BACKGROUND

During the summer of 2012, when H.T. was 12 or 13 years old, she babysat some children in her apartment complex, including D.R., the child of

Citations and pin cites are based on the Westlaw online version of the cited material.

David and Brandy Ross. Defendant Ross lived with David (his brother) and Brandy.[1] Ross was 27 years old at the time.

The day of the incident, Brandy asked H.T. at the apartment swimming pool if she could watch D.R. while she ran an errand. H.T. agreed and went to the parents' apartment to change D.R. into her swimsuit.

During trial, H.T. testified about the following: She thought she was alone in the apartment with D.R. While she was in the bedroom retrieving D.R.'s swimsuit, she heard the apartment door close. When she entered the living room, she heard the freezer door shut, and then Ross "came behind" her, put his "freezing cold" hands inside her top, and touched her breasts. She "stood there for a few seconds, not knowing what to do," then "removed" herself from Ross's hands, went to sit on the couch, and focused on trying to change D.R.'s clothes. Ross followed her to the couch and sat between H.T. and the front door. He touched her leg, moved his hand up her leg into her clothing, and put his fingers inside her vagina. H.T. felt "sharp cold pain." She stood up and "shoved" Ross off in "one big movement," using her "momentum." She ran out of the apartment, leaving D.R. behind, and began crying once she was out of Ross's presence.

H.T. kept the incident to herself for about four years. In 2016, during a camp counselor training exercise, after another trainee shared her experience with sexual assault, H.T. disclosed the incident involving Ross. A camp director reported the disclosure to law enforcement.

---

[1] For clarity, we refer to David and Brandy Ross by their first names, and we refer to the defendant, Jack Ross, by his last name. We intend no disrespect.

Officer Brent Eggleston contacted H.T. and she provided a statement. Officers then interviewed Ross. He told them that he remembered H.T. and putting his cold hands on her and wrestling with her. He did not admit to touching her breasts or vagina and said, if he did so, possibly while wrestling, he did not remember it. The State charged Ross with rape in the second degree and rape of a child in the second degree.

During trial, H.T.'s testimony differed in some respects from her statement to the officer, which she had provided about three years before. She testified that, at the time of the incident, she was wearing only a two-piece bathing suit. But she had told Officer Eggleston that she was wearing a shirt and shorts over her bathing suit. Also at trial, H.T. denied screaming during the incident and then said she did not recall whether she or D.R. screamed. Yet she had told Officer Eggleston that when Ross penetrated her, she screamed for 30 to 50 seconds, and that D.R. also screamed.

After the jury reached a verdict, but before its announcement, defense counsel moved for a mistrial, contending the State impermissibly diminished its burden of proof during closing argument. The trial court denied the motion as untimely and shared that it would have denied the motion even if it were timely.

The jury found Ross guilty as charged.

## II. ANALYSIS

### A. Prosecutorial Misconduct

Ross says the State committed prosecutorial misconduct during closing argument in four ways: (1) misstating the law on forcible compulsion; (2) diminishing its burden of proof; (3) encouraging the jury to reach a verdict based on evidence outside the record; and (4) inflaming the jury's passions and prejudices. We do not see a basis for reversal on any of these grounds.

A prosecutor must ensure that they do not violate a defendant's right to a constitutionally fair trial. State v. Monday, 171 Wn.2d 667, 676, 257 P.3d 551 (2011). To establish misconduct, the defendant bears the burden of first showing the prosecutor's comments were improper. State v. Boyd, 1 Wn. App. 2d 501, 517–18, 408 P.3d 362 (2017); State v. Emery, 174 Wn.2d 741, 759, 278 P.3d 653 (2012).

> Once a defendant establishes that a prosecutor's statements are improper, we determine whether the defendant was prejudiced under one of two standards of review. If the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. If the defendant did not object at trial, the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice.

Emery, 174 Wn.2d at 760–61 (citation omitted). If the defense does not object at trial, "the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" Id. (quoting State v. Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). Also, if

4

defense counsel fails to object to allegedly improper comments made by a prosecutor, it "'strongly suggests'" that the comments "'did not appear critically prejudicial to [the defendant] in the context of the trial.'"  State v. McKenzie, 157 Wn.2d 44, 53 n.2, 134 P.3d 221 (2006) (emphasis omitted) (quoting State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990)).

1. The law of forcible compulsion

Ross says the State committed misconduct during closing argument by suggesting the jury could find forcible compulsion based on penetration alone. The State disputes it made any such suggestion and points to its broader argument about the circumstances surrounding the incident.  We conclude the State did not misstate the law.

A prosecutor commits misconduct by misstating the law.  State v. Allen, 182 Wn.2d 364, 373, 341 P.3d 268 (2015).  Misstatements of the law have "'grave potential to mislead the jury.'"  In re Det. of Urlacher, 6 Wn. App. 2d 725, 746, 427 P.3d 662 (2018) (quoting State v. Davenport, 100 Wn.2d 757, 763, 675 P.2d 1213 (1984)).  "Statements as to the law in closing argument are to be confined to the law set forth in the instructions."  Id. at 746–47.

To find Ross guilty of rape in the second degree, consistent with the law,[2] the applicable instruction required the jury to find: "(1) That between the 16th day of July, 2011, and the 31st day of July, 2012, the defendant engaged in sexual intercourse with H.T.; and (2) That the sexual intercourse occurred by *forcible*

---

[2] RCW 9A.44.050.

*compulsion.*" (Emphasis added.) Also consistent with the law,[3] another instruction provided, "[f]orcible compulsion means physical force which overcomes resistance."

During closing argument, the State explained that rape in the second degree involves forcible compulsion when "sexual intercourse was done with physical force that overcomes resistance." The State said, "So the component or the element in this case is that the sexual intercourse, putting the fingers in the vagina, was done with physical force that overcame [H.T.]'s resistance." The State then reviewed facts relating to the issue of overcoming resistance such as the size and age difference between Ross and H.T. and the fact that they were in his home. The State said, "He clearly used enough force to get his fingers inside her vagina, and he clearly overcame any resistance. In this case, as [H.T.] described, there at least wasn't any resistance to begin with because he took her completely by surprise." Finally, the State said, "So again, he was able to put his fingers in her vagina with forcible compulsion."

Ross contends the State suggested to the jury that it could find forcible compulsion based on the act of digital penetration alone and that doing so was a misstatement of the law. But the State did not do so. It explained forcible compulsion using wording similar to the jury instruction. See Urlacher, 6 Wn. App. 2d at 746–47 ("Statements as to the law in closing argument are to be confined to the law set forth in the instructions."). Then, it argued—perhaps not

---

[3] RCW 9A.44.010(6).

as fully as it could have—that Ross's actions taken as a whole constituted forcible compulsion.

2. The burden of proof

Ross says the State impermissibly diminished its burden of proof during closing argument. He contends that the State did so by telling the jury that it could convict despite having a reasonable doubt. We conclude that while the State's comments were improper, a jury instruction could have cured any resultant prejudice.

"Arguments by the prosecution that shift or misstate the State's burden to prove the defendant's guilt beyond a reasonable doubt constitute misconduct." State v. Lindsay, 180 Wn.2d 423, 434, 326 P.3d 125 (2014). "Due process requires that the State bear the burden of proving every element of the crime beyond a reasonable doubt." State v. Warren, 165 Wn.2d 17, 26, 195 P.3d 940 (2008). "[I]t is an unassailable principle . . . that the defendant is entitled to the benefit of *any* reasonable doubt. It is error for the State to suggest otherwise." Id. at 26–27 (emphasis added).

> The trial court instructed the jury that
>
> > [t]he defendant has entered a plea of not guilty. That plea puts in issue every element of each crime charged. The State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists.
> >
> > A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.

7

> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence.  It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence.  If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

See WPIC 4.01.[4]

During closing argument, the State misstated the relationship between the concepts of "abiding belief" and "reasonable doubt."  It said of its burden, "It's beyond a reasonable doubt.  *You can have a reasonable doubt.  But if you still have an biding [sic] belief in the truth of the charge, even with your reasonable doubts, then you are convinced beyond a reasonable doubt.*"[5]  (Emphasis added.)  The defense did not object.  It did respond in its closing argument by saying

> if you get to the end of your deliberations and you have a reasonable doubt as to any of the elements in either of these counts, then it is your duty to deliver a verdict of not guilty.  That's what a reasonable doubt means.  It's not accurate to suggest that you can have a reasonable doubt as to any of the elements and still return a verdict of guilty.

During rebuttal closing argument, the State said

> [s]o I'm going to disagree with Mr. Lewis, the defendant's attorney, on what he believes is beyond a reasonable doubt.
>
> . . . .
>
> *Counsel states that if you have a reasonable doubt that it's your duty to find the defendant not guilty.  That's not how I read Jury Instruction No. 3.*  The common language is beyond a reasonable doubt.  *So if you have a reasonable doubt and you are convinced*

---

[4] Our Supreme Court "approved WPIC 4.01 and concluded that it adequately permits both the government and the accused to argue their theories of the case" and directed the trial courts to use it to instruct the jury of the State's burden in criminal cases.  State v. Bennett, 161 Wn.2d 303, 317–18, 165 P.3d 1241 (2007).

[5] In its appellate briefing, the State omits, and does not address, these problematic comments.

> *beyond that reasonable doubt, you have an abiding belief in the truth of the charge and you can find the defendant guilty.* So again we're going to disagree.

(Emphasis added.)

While certain portions of the State's closing argument properly conveyed the burden of proof, others improperly suggested to the jury that it could convict Ross even if it had a reasonable doubt. See Warren, 165 Wn.2d at 25, 26–27 (emphasizing that "the defendant is entitled to the benefit of *any* reasonable doubt" where the State said during closing argument that the defendant was not entitled to the benefit of the doubt (emphasis added)). The State said the jury could find Ross guilty "even with" a reasonable doubt.

The State claims it was trying to explain that the standard is not "beyond *all* doubt." (Emphasis added.) But the comments at issue discuss the jury's reasonable doubt—not all doubt. The State also says that its comments were proper because it is possible to have doubts as to non-elements of a charge and still find the defendant guilty. But during its closing argument, it did not specify that it was addressing doubts as to non-elements.

Our standard of review depends on whether Ross objected to these comments at trial. See Emery, 174 Wn.2d at 760–61. Ross contends that his motion for a mistrial served as an objection to these comments. The State suggests that the motion, made after the jury reached a verdict but before its announcement, did not preserve the issue. We agree with the State.

Ross relies on Lindsay, which differs from this case. There, the court held that the defense's "motion for a mistrial due to prosecutorial misconduct directly

9

following the prosecutor's rebuttal closing argument" preserved the issue for appellate review. 180 Wn.2d at 430–31. Presumably, this gave the trial court the opportunity to consider a curative instruction before deliberation.[6] But here, Ross moved for a mistrial after the deliberations and a curative instruction would have thus been futile. Ross otherwise cites no law supporting his position.

Because Ross did not object at trial and his untimely motion for a mistrial failed to preserve the issue, he must show that the "prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." Emery, 174 Wn.2d at 760–61. In Warren, during closing argument, the prosecutor improperly repeated that the defendant was not entitled to "the benefit of doubt." 165 Wn.2d at 24–52, 27. The defense objected and the court provided a curative instruction explaining the State's burden of proof. Id. at 25 (referring the jury to the written instructions and explaining that if the jury has a reasonable doubt, the benefit of such doubt is in the defendant's favor). Our Supreme Court held that because the trial court "interrupted the prosecutor's argument to give a correct and thorough curative instruction, we find that any error was cured." Id. at 28. Likewise, here, a curative instruction following a timely objection would have obviated any prejudicial effect.[7]

---

[6] The purpose of the objection requirement is to ensure that the trial court has an opportunity to correct an improper comment. Emery, 174 Wn.2d at 761–62. Moving for mistrial after the jury has reached its verdict does not serve that purpose.

[7] Ross contends that any such instruction would not have cured any prejudice because the court said that, if it had given a curative instruction, it likely would have told the jury that the jury was the sole judge of the instructions. But the inquiry is whether "no

3. Facts outside the record

Ross says that the State improperly referenced evidence outside the record when it discussed a holdout juror in a different case who demanded non-existent satellite imaging of the crime. The State contends its comments merely appealed to common sense. We conclude the State did not commit misconduct and, even if it did, a jury instruction could have cured any prejudice.

"A prosecutor commits misconduct by encouraging the jury to decide a case based on evidence outside the record." State v. Teas, 10 Wn. App. 2d 111, 128, 447 P.3d 606 (2019), review denied, 195 Wn.2d 1008, 460 P.3d 182 (2020). During rebuttal closing argument, the State said:

> I had a colleague who was trying a case once, and the jury was 11 to 1 to convict. And that one holdout juror was a big "CSI" fan and said he knows based on watching "CSI" that there's satellites in the sky and he wants the police to get a copy of the incident based on that satellite.
>
> I can tell you today that in any case that's tried in the United States, there is not going to be that satellite in the sky. This is real life. This is real life cases. This is real life human beings in this case. And again, that's why we employ the beyond a reasonable doubt standard and not beyond all doubt, which is probably what you would get if you get that satellite in the sky.

The State did not encourage the jury to find Ross guilty based on evidence outside the record.[8] In discussing the reasonable doubt standard, the

---

curative instruction would have obviated any prejudicial effect on the jury," not whether the one the court may have given would have sufficed. Thorgerson, 172 Wn.2d at 455.

[8] Ross makes a series of additional claims about the State's comments. It is unclear how these claims relate to the issue of encouraging a jury to rely on evidence outside the record. First, Ross claims the State improperly inserted itself as an expert on what evidence a jury can expect to receive; but as Ross cites no law supporting this contention, we do not address the claim. See Prostov v. Dep't of Licensing, 186 Wn. App. 795, 823, 349 P.3d 874 (2015) ("The failure of an appellant to provide argument and citation of authority in support of an assignment of error precludes appellate

State did mention an unrelated jury trial and indicated that there will never be satellite imaging in any case tried in the United States (which, literally construed, is a questionable statement). But the existence of satellite imaging is not at issue here. The State did not suggest that anything from the unrelated case constituted evidence in this case. Instead, the State used those comments to discuss the burden of proof.

Even assuming the State committed misconduct, its comments were not so flagrant and ill-intentioned that a curative instruction could not address any prejudice. See Emery, 174 Wn.2d at 760–61. The trial court did instruct the jury that the lawyers' comments were not evidence and we presume jurors follow instructions. See In re Pers. Restraint of Phelps, 190 Wn.2d 155, 171–72, 410 P.3d 1142 (2018) ("Closing arguments are not evidence, and the jury here was given an instruction to that effect. Jurors are presumed to follow the court's instructions." (citation omitted)). And a similar instruction could have cured any prejudice resulting from the comments here. Cf. Teas, 10 Wn. App. 2d at 126 (holding that a comparison of the weapon in the case to the weapon used in the 9/11 terrorist attacks, while misconduct, was "not so flagrant and ill intentioned that the resulting prejudice could not have been cured with a jury instruction").

---

consideration of an alleged error."). Second, relying on State v. Smiley, 195 Wn. App. 185, 194–95, 379 P.3d 149 (2016), Ross says the State's comments impermissibly told the jury what kind of evidence it could expect. But Smiley does not support the contention that such a comment is improper. Finally, Ross says the State's comments invaded the province of the jury to decide what doubts were reasonable. But the State did not do so; it addressed why the standard is not beyond all doubt. And Ross did not support his argument with citation to pertinent legal authority. See Prostov, 186 Wn. App. at 823 (noting that failing to cite authority precludes appellate review).

4. Passions and prejudices of the jury

Ross says the State improperly appealed to the passions and prejudices of the jury during rebuttal closing argument when it said the defense theory deprived teenage girls of their "voice." The State counters that it responded fairly to offensive stereotyping of teenage girls during the defense's closing argument. We conclude that the State did not act improperly.

"'Mere appeals to the jury's passion or prejudice are improper.'" State v. Pierce, 169 Wn. App. 533, 552–53, 280 P.3d 1158 (2012) (quoting State v. Gregory, 158 Wn.2d 759, 808, 147 P.3d 1201 (2006), overruled by State v. W.R., Jr., 181 Wn.2d 757, 336 P.3d 1134 (2014)).

During closing argument, defense counsel said:

> And I want us all, . . . to remember what it's like to be 15 or 16 years old and away with a group of people that you are getting to know well and the dopamine, the adrenaline, and the strong emotion that runs with something like this and how important it is to us at that age to reach out to others and to feel included ourselves.
>
> . . .
>
> This other young lady discloses that she had been raped. And [H.T.] wants her to feel included. She wants to reach out. I think these were not dishonest motives but actually rather endearing ones.

During rebuttal argument, the State responded to these comments by saying:

> How counsel I think is suggesting that this is some sort of teenager—teenage girl situation going on here, where perhaps she's too emotional or something like that, I'm not quite sure how to respond to that because I—I don't know, number one, that there is such an exception. I think if counsel is truly arguing that because she was a teenage girl when she first disclosed it just on its face is not reliable, I think that's actually insulting at the very least. And you might not agree with me on that. But that means that teenage girls don't have a voice.

13

Ross relies on State v. Smiley, 195 Wn. App. 185, 379 P.3d 149 (2016), to argue that the State committed misconduct. There, the prosecutor made multiple comments during closing argument about how requiring corroborating evidence to convict child sex abusers would lead to an inability to prosecute such abusers and inadequate protection for child victims. Id. at 191–93. This court held that these comments were improper because "[j]urors should not be made to feel responsible for ensuring that the criminal justice system is effective in protecting children." Id. at 194–95. This court concluded, however, that Smiley waived his argument because he did not object at trial despite the opportunity to do so and a jury instruction could have cured any potential prejudice. Id. 196–97.

Here, the State did not suggest that the jury had to ensure that the criminal justice system effectively protected teenage girls. The State said *if* defense counsel was "truly arguing" that teenage girls are too emotional and thus unreliable, that would mean they do not have a voice.

Even assuming the State's comments were misconduct, they were not so flagrant and ill-intentioned that an instruction could not have cured any resultant prejudice. See Emery, 174 Wn.2d at 760–61. As in Smiley, Ross did not object at trial. And a proper instruction could have cured any resultant prejudice.

B. IAC

Ross says that his trial counsel was ineffective for failing to request curative instructions after each of the four claimed instances of prosecutorial misconduct discussed above. We do not see a basis to reverse on this ground.

14

"'Because claims of [IAC] present mixed questions of law and fact, we review them de novo.'" State v. Linville, 191 Wn.2d 513, 518, 423 P.3d 842 (2018) (quoting In re Pers. Restraint of Brett, 142 Wn.2d 868, 873, 16 P.3d 601 (2001)).  For a defendant to prevail on a claim of IAC, they must show that their defense "counsel's performance fell below an objective standard of reasonableness and that [they were] prejudiced by the deficient performance." Id.  We are "highly deferential to the performance of counsel" in assessing the reasonableness of their actions.  State v. Crawford, 159 Wn.2d 86, 98, 147 P.3d 1288 (2006).  Deficient performance prejudices a defendant when a "substantial" likelihood of a different outcome exists; it is not enough for a different outcome to be merely "conceivable."  In re Pers. Restraint of Lui, 188 Wn.2d 525, 538–39, 397 P.3d 90 (2017).

Because Ross has not shown that the State's comments about the law of forcible compulsion, a holdout juror from a separate case, and the voice of teenage girls were misconduct, he has failed to show that his trial counsel's performance was deficient for failing to object and request curative instructions as to those comments.  But because we conclude above that the State did misstate its burden of proof, we analyze his claim related to that issue.

Even if Ross's trial counsel were deficient in failing to object and request a curative instruction for the State's improper comments about reasonable doubt, Ross has not established a substantial likelihood of a different result.  Though the State improperly suggested the jury could find Ross guilty despite having a

reasonable doubt, it did say that the burden of proof was beyond a reasonable doubt. Ross claims that the inconsistencies between H.T.'s testimony and her statements to the officer, along with no witness testifying that they heard her screaming from inside Ross's apartment, mean that a jury has sources for a reasonable doubt. But H.T. was consistent in her statements about Ross's criminal conduct. And Ross did not deny touching H.T.'s breasts or vagina. Instead, he stated that he remembered H.T. and putting his cold hands on her and wrestling with her. He said if he did touch her breasts or vagina, he did not remember. Without the State's misstatement about the burden a proof, a different outcome is conceivable; but the likelihood of such an outcome is hardly substantial. See Lui, 188 Wn.2d at 538–39.

C. Motion for Mistrial

Ross says the trial court erred by denying his motion for a mistrial based on the State's comments misstating its burden of proof. We conclude the court did not abuse its discretion.

We review a trial court's denial of a motion for a mistrial for abuse of discretion. State v. Gamble, 168 Wn.2d 161, 177, 225 P.3d 973 (2010). "A trial court abuses its discretion in denying a motion for a mistrial only if its decision is manifestly unreasonable or based on untenable grounds." State v. Wade, 186 Wn. App. 749, 773, 346 P.3d 838 (2015). "The trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can ensure that the defendant will be fairly tried." Emery, 174 Wn.2d at 765.

After the jury reached a verdict, but before it announced its verdict, Ross moved for a mistral based on the State's improper comments about the reasonable doubt standard. The trial court denied the motion as untimely

We conclude above, in the section about IAC, that no substantial likelihood of a different outcome exists without the alleged deficient performance relating to the State's comments. Similarly, we conclude that Ross was not "so prejudiced that nothing short of a new trial" could ensure that he was "fairly tried." Emery, 174 Wn.2d at 765.

D. Sufficiency of Evidence

Ross says that insufficient evidence supports the jury's finding of forcible compulsion. He claims that the State's evidence showed no more force than that normally required to achieve sexual penetration. We disagree.

"Sufficiency of the evidence is a question of constitutional law we review de novo." State v. Mireles, 16 Wn. App. 2d 641, 662, 482 P.3d 942 (2021). Sufficient evidence supports a conviction if "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)). When reviewing a challenge to the sufficiency of evidence, we must draw all reasonable inferences from the evidence in favor of the State and interpret the evidence "'strongly against'" the defendant. State v. Scanlan, 193 Wn.2d 753, 770–71, 445 P.3d 960 (2019) (quoting State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068

(1992)), cert. denied, 140 S. Ct. 834, 205 L. Ed. 2d 483 (2020). "'A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.'" Id. (quoting Salinas, 119 Wn.2d at 201). "We also defer to the jury's evaluation of witness credibility, resolution of testimony in conflict, and weight and persuasiveness of the evidence." State v. Bass, No. 80156-2-I, slip op. at 17 (Wash. Ct. App. Aug. 16, 2021), https://www.courts.wa.gov/opinions/pdf/801562.pdf.

To find Ross guilty of rape in the second degree, the law required the jury to find that Ross had sexual intercourse with H.T. through forcible compulsion. RCW 9A.44.050. "Forcible compulsion means physical force which overcomes resistance." RCW 9A.44.010(6). "Forcible compulsion means that 'the force exerted was . . . more than that which is normally required to achieve penetration.'" State v. Corey, 181 Wn. App. 272, 277, 325 P.3d 250 (2014) (quoting State v. Wright, 152 Wn. App. 64, 71, 214 P.3d 968 (2009)).

Viewing the evidence in the light most favorable to the State, any rational trier of fact could find forcible compulsion beyond a reasonable doubt.

Sufficient evidence supports a finding that H.T. resisted the rape. Resistance need not be physical. See State v. Bartolome, 139 Wn. App. 518, 522, 161 P.3d 471 (2007) ("to prove forcible compulsion, the State need not show that the victim physically resisted." (citing State v. McKnight, 54 Wn. App. 521, 525, 774 P.2d 532 (1989))). When Ross came up behind H.T. and put his hands into her top, she removed herself from his grasp and moved away from

18

him. She went to the couch and focused on the task of dressing D.R. H.T. was a 115-pound 12-year-old girl while Ross was a 27-year-old man with an "average build." And H.T. was alone, in Ross's apartment, with Ross and the young child. See McKnight, 54 Wn. App. at 527 (concluding that a reasonable juror could find resistance where the rape victim was "physically weak," young, and alone with the defendant).

Sufficient evidence supports a finding that Ross used physical force to overcome H.T.'s resistance. The evidence showed that, after H.T. removed herself from his grasp and moved away from him, Ross followed her to the couch and sat down between her and the front door. He continued to touch her despite her having moved away from him. He put his hands into her clothing and penetrated her hard enough that she felt pain. To escape the rape, H.T. used "momentum" to "shove[]" Ross off of her.

Ross contrasts this case with McKnight in which the defendant slowly pushed the victim down into the prone position and removed her clothing despite her requests that he stop. 54 Wn. App. at 528. This court held in McKnight that this was sufficient evidence of force overcoming resistance. Id. Ross contends that because he did not push H.T. down or disrobe her, his force was no more than that necessary to achieve penetration. But instead of removing her clothes, Ross put his hand inside them. And though Ross did not push H.T. down into a prone position, he did sit between her and the door and she used "momentum" to remove herself.

19

E. Supervision Fees

Ross challenges a community custody condition requiring him to "[p]ay supervision fees as determined by the Department of Corrections." The State disagrees.[9] We remand for the trial court to strike the supervision fees.

Because trial courts can waive supervision fees, they are discretionary LFOs. State v. Dillon, 12 Wn. App. 2d 133, 152, 456 P.3d 1199, review denied, 195 Wn.2d 1022, 464 P.3d 198 (2020); RCW 9.94A.703(2). "Where the record demonstrates that the trial court intended to impose only mandatory LFOs but inadvertently imposed supervision fees, it is appropriate for us to strike the condition of community custody requiring these fees." State v. Peña Salvador, No. 81212-2-I, slip op. at 23 (Wash. Ct. App. Jun. 6, 2021), https://www.courts. wa.gov/opinions/pdf/812122.pdf.

During sentencing, the court said that it was "going to waive any nonmandatory fees and costs." The section on LFOs in the judgment and sentence does not provide an option for imposing supervision fees. In that

---

[9] The State says that because the provision at issue allows the Department of Corrections (DOC) to impose supervision fees later, and DOC has not yet imposed such fees, Ross is not an aggrieved party and RAP 3.1 bars our review. We disagree. See State v. Shirts, 195 Wn. App. 849, 856–57, 381 P.3d 1223 (2016) (rejecting argument that "the State must attempt to collect LFOs from an offender before the offender can be considered 'aggrieved.'"); State v. Wallmuller, 194 Wn.2d 234, 238, 449 P.3d 619 (2019) (providing that we may review a condition of community custody "preenforcement" if "the challenge involves a legal question that can be resolved on the existing record"); see also RAP 1.2 (providing that we will liberally interpret rules to "facilitate the decision of cases on the merits").

The State also contends that because Ross did not object to the imposition of supervision fees before the trial court, he waived his argument under RAP 2.5. We disagree with this as well. See id. at 238 ("Conditions of community custody may be challenged for the first time on appeal").

section, the court imposed only mandatory LFOs.  An appendix attached to the judgment and sentence includes prewritten language in a paragraph about community custody conditions imposing supervision fees.

In Dillon, we struck supervision fees because the record established that "the trial court intended to impose only mandatory LFOs."  12 Wn. App. 2d at 152; RCW 9.94A.703(2); see also State v. Markovich, No. 81423-1-I, slip. op. at 18 (Wash. Ct. App. Aug. 2, 2021), https://www.courts.wa.gov/opinions/pdf/ 814231.pdf (holding similarly).  At sentencing, the trial court said it would "waive the DNA (deoxyribonucleic acid) fee and the filing fee, and 'simply order $500 victim penalty assessment, which is still truly mandatory, as well as restitution, if any.'"  Dillon, 12 Wn. App. 2d at 152.  The trial court did not mention supervision fees.  Id.  We concluded that this, along with the location of the prewritten language imposing supervision fees—in a separate section on community custody conditions—supported a remand for the supervision fees to be stricken. Id.

Here, the trial court explicitly stated that it was waiving "any nonmandatory fees and costs."  As in Dillon, it appears the trial court inadvertently imposed the supervision fees by using a form judgment and sentence with prewritten language in the community custody conditions appendix.[10]

---

[10] In a recent case, State v. Starr, 16 Wn. App. 2d 106, 109–10, 479 P.3d 1209. (2021), Division Two of this court addressed a somewhat similar situation.  The sentencing court stated, "The defendant is otherwise indigent.  So no other *costs* will be assessed."  Id. at 108 (emphasis added).  On appeal, a majority of the panel observed that supervision fees do not constitute *costs,* and thus the sentencing court's statements did not necessarily show that it did not intend to impose such *fees.*  Id. at 109.  The dissenting judge agreed that such fees are not statutory costs, but believed that the

The State contends that the written judgment and sentence controls over the trial court's oral statements if they conflict. State v. Sims, 193 Wn.2d 86, 100, 441 P.3d 262 (2019). We rejected this argument in State v. Spieker, noted at 16 Wn. App. 2d 1080, 2021 WL 1091898 at *3 (2021),[11] noting that the imposition of supervision fees through prewritten language is "more akin to a scrivener's error or clerical mistake than a contradictory statement." Ross makes a similar argument. "The remedy for such a clerical or scrivener's error is remand to the trial court for correction of the judgment and sentence." Id. (citing In re Pers. Restraint of Mayer, 128 Wn. App. 694, 701–02, 117 P.3d 353 (2005)).

We remand for the trial court to strike the supervision fees and otherwise affirm.

_____
Chun, J.

WE CONCUR:

_____          _____

---

sentencing court stated an intent not to impose the fees. Id. at 111. Here, Starr does not apply, as the sentencing court made clear that it intended to waive all nonmandatory fees.

[11] See GR 14.1(c) ("Washington appellate courts should not, unless necessary for a reasoned decision, cite or discuss unpublished opinions in their opinions.").