[No. 29319-2-I.   Division One.   May 16, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD A. DYSON, *Appellant*.

238

*Matthew R. Miller* and *Theresa Doyle* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michael Lang, Deputy,* for respondent.

PEKELIS, A.C.J. — Richard Dyson (Dyson) appeals his conviction for one count of telephone harassment pursuant to RCW 9.61.230, arguing that: (1) RCW 9.61.230(1) and (2) are unconstitutionally overbroad; (2) RCW 9.61.230(2) is unconstitutionally vague; (3) the evidence was insufficient to support each of the alternate means of proving telephone harassment; and (4) he was denied his constitutional right to a unanimous jury verdict. We affirm.

The facts leading up to Dyson's conviction began in 1980 when Dyson met Beverly Larson (Larson) with whom he became involved in a romantic relationship that lasted approximately 4 years. Apparently unable to accept the fact that the relationship had ended, Dyson began to harass Larson. Although the record does not contain Dyson's entire criminal history, it does show that between 1985 and 1986,

Dyson was once convicted of misdemeanor telephone harassment and three times convicted of violating a no-contact order. For each of these convictions, Larson was his victim. In order to avoid Dyson, Larson moved twice and changed her unlisted telephone number several times. Larson also began screening her calls via a telephone answering machine, which enabled her to hear the message as it was recorded.

Between January 8 and January 11, 1991, Larson received approximately 50 telephone calls, which were recorded on the answering machine. In many calls, Dyson's voice is heard on the answering machine tape. Interspersed between messages were multiple hang-up calls. In some calls, Dyson used vituperative language and threatened Larson and her family. For instance, in one call Dyson stated:

> Wednesday, 5:28 p.m. Bev, me, Ray. Yeah, I'll show you what smart is. You know you can't use any of this in court because you have to have permission from someone to be recorded . . . You want your whole family to suffer, Maria, your whole family, 'cause I've got them targeted. Just keep fucking with me, the way you're doin . . ..

Between February 7 and February 8, 1991, Larson received approximately 15 more calls from Dyson, which were similar in nature to those she had received earlier.

By amended information, Dyson was charged with one count of harassment, which was later dismissed, and one count of telephone harassment.

At trial, Larson testified that she recognized Dyson's voice on the answering machine tapes, which were played in court. She also testified that she was not at home on January 10, 1991, when the answering machine recorded 28 calls between the hours of 1:44 a.m. and 2:47 a.m. On cross examination, Larson denied threatening Dyson and denied editing the tapes.

Dyson testified that he had gone out with Larson socially more than two dozen times in 1990. Dyson testified that Larson had made several late night calls to him in 1991, which he considered to be threatening and harassing. For

instance, he testified that she had threatened to use the legal system against him. He testified that he did not call her to threaten harm to her or her family, but "to get her to knock . . . off " her threats.

Over the Defendant's objection, the jury was instructed:

To convict the defendant Richard Dyson of the crime of telephone harassment . . . each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That during the period of time intervening between the 8th day of January, 1991 and the 8th day of February, 1991, the defendant with intent to harass, intimidate or torment made a telephone call to Beverly Larson;

(2) That during such telephone call the defendant either:

    (a) used lewd, lascivious, profane, indecent or obscene words or language, or suggested the commission of any lewd or lascivious act; or

    (b) telephone anonymously or repeatedly or at an extremely inconvenient hour, whether or not conversation ensued; or

    (c) threatened to inflict injury on the person or property of the person called or any member or her family; and

(3) That the acts occurred in King County, Washington.

If you find from the evidence that elements (1) and (3) and either (2)(a) or (2)(b) or (2)(c) have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty. Elements (2)(a), (2)(b) and (2)(c) are alternatives and only one need be proved. *You need not be unanimous as to which of those alternatives is proved.*

(Italics ours.)

The jury convicted Dyson as charged. Dyson received a standard range sentence.

Dyson appeals.

# I

## Overbreadth of RCW 9.61.230(1) and RCW 9.61.230(2)

Dyson contends that two subsections of Washington's telephone harassment statute, RCW 9.61.230(1) and (2), are unconstitutionally overbroad.[1]

RCW 9.61.230 provides:

---

[1]State constitutional analysis must be independently raised and briefed. *State v. Ivan*, 71 Wn. App. 145, 149 n.2, 856 P.2d 1116 (1993). Because Dyson does not argue that the statute is overbroad under the state constitution, our analysis is confined to the federal constitution.

Every person who, with intent to harass, intimidate, torment or embarrass[2] any other person, shall make a telephone call to such other person:

(1) Using any lewd, lascivious, profane, indecent, or obscene words or language, or suggesting the commission of any lewd or lascivious act; or

(2) Anonymously or repeatedly or at an extremely inconvenient hour, whether or not conversation ensues; or

(3) Threatening to inflict injury on the person or property of the person called or any member of his or her family or household;

■■ In the First Amendment context, a statute is void as overbroad if it sweeps constitutionally protected free speech activities within its prohibitions and no means exist by which to sever its unconstitutional applications. *State v. Talley*, 122 Wn.2d 192, 210, 858 P.2d 217 (1993); *Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989) (citing *Thornhill v. Alabama*, 310 U.S. 88, 97, 84 L. Ed. 1093, 60 S. Ct. 736 (1940)). "[T]he concern with an overbroad statute stems . . . from the possibility that the threat of its application may deter others from engaging in otherwise protected expression." *CISPES v. FBI*, 770 F.2d 468, 472 (5th Cir. 1985) (citing *Grayned v. Rockford*, 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972)). However, when used to invalidate a statute on its face, the overbreadth doctrine has been held "strong medicine" to be applied "only as a last resort". *Talley*, 122 Wn.2d at 210 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973)).

In *Seattle v. Huff*, 111 Wn.2d at 925-26, the Washington Supreme Court set out the overbreadth analysis in the context of determining the constitutionality of a subsection of a municipal telephone harassment ordinance identical to RCW 9.61.230(3). When analyzing a statute for overbreadth, the key determination is "whether the enactment reaches a substantial amount of constitutionally protected conduct.' " *Huff*, at 925 (quoting *Houston v. Hill*, 482 U.S. 451, 458, 96 L. Ed. 2d 398, 410, 107 S. Ct. 2502, 2508 (1987)). However, even if the statute does proscribe a substantial amount of protected

---

[2]The term "embarrass" is not before the court as the trial court struck the term based on our holding in *Seattle v. Huff*, 51 Wn. App. 12, 16, 751 P.2d 879 (1988), *aff'd*, 111 Wn.2d 923, 767 P.2d 572 (1989).

conduct, speech in nonpublic forums, including speech over the telephone, may be restricted if it is found that " 'the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral.' " *Huff*, at 927 (quoting *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 806, 87 L. Ed. 2d 567, 105 S. Ct. 3439 (1985)).

The *Huff* court concluded that the challenged subsection was not overbroad. *Huff*, at 928. Although the court found that the statute's prohibition against "threats" proscribed a substantial amount of protected speech, the court found that the prohibition against threats to harm a person or property made over the phone with the requisite intent was reasonable and viewpoint neutral. *Huff*, at 926-27.

Our primary inquiry in determining whether RCW 9.61.230(1) is overbroad is whether the subsection's prohibition against the use of "lewd, lascivious, profane, indecent, or obscene words or language" in a telephone call when done with the requisite intent reaches a substantial amount of constitutionally protected conduct.

First, we note that RCW 9.61.230(1) regulates conduct implicating speech, not speech itself. *See Talley*, 122 Wn.2d at 210 (upholding a subsection of the malicious harassment statute against an overbreadth challenge because it primarily regulated *conduct* and its "incidental impact" on speech was minimal). Although RCW 9.61.230(1) contains a speech component, it is clearly directed against specific conduct — making telephone calls with the intent to harass, intimidate, or torment another while using lewd, lascivious, profane, indecent, or obscene words or language, or suggesting the commission of any lewd or lascivious act. Because the requisite intent establishes the criminality of the communicative conduct, any impact that RCW 9.61.230(1) has on speech is insubstantial.[3]

---

[3]The cases that Dyson relies on in support of overbreadth are clearly distinguishable. Neither the statute struck down in *Radford v. Webb*, 446 F. Supp. 608 (W.D.N.C. 1978), *aff'd*, 596 F.2d 1205 (4th Cir. 1979), nor in *Walker v. Dillard*, 523 F.2d 3 (4th Cir.), *cert. denied*, 423 U.S. 906 (1975) contained an intent element. Likewise, neither terms at issue in *Everett v. Moore*, 37 Wn. App. 862, 683 P.2d 617 (1984), nor in *State v. Reyes*, 104 Wn.2d 35, 700 P.2d 1155 (1985), are found in RCW 9.61.230(1).

Moreover, the level of constitutional protection given to "lewd, lascivious, profane, indecent, or obscene words or language" is minimal at best. It has long been recognized that certain classes of speech are not entitled to first amendment protection, including "the lewd and obscene, the profane, the libelous and the insulting or 'fighting' words — those which by their very utterance inflict injury or tend to incite an immediate breach of the peace."[4] *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72, 86 L. Ed. 1031, 1035, 62 S. Ct. 766, 769 (1942).

■ Although "indecent" speech has received some level of constitutional protection, *see Sable Communications of Cal., Inc. v. FCC*, 492 U.S. 115, 124, 106 L. Ed. 2d 93, 109 S. Ct. 2829, 2835 (1989), the statute's impact on "indecent" speech is not problematic because the intent element sufficiently ensures that a substantial amount of protected expression is not deterred. The State has a substantial interest in protecting private citizens from those who use the telephone with the intent to harass others. *See Everett*, 37 Wn. App. at 865. As one court aptly stated:

> The government has a strong and legitimate interest in preventing the harassment of individuals. The telephone, a device used primarily for communication, presents to some people a unique instrument through which to harass and abuse others. Because the telephone is normally used for communication does not preclude its use in a harassing course of conduct. . . .
>
> > Prohibiting harassment is not prohibiting speech, because harassment is not a protected speech. Harassment is not communication, although it may take the form of speech. The statute prohibits only telephone calls made with the intent to harass. Phone calls made with the intent to communicate are not prohibited. Harassment, in this case, thus is not protected merely because it is accomplished using a telephone.

*Thorne v. Bailey*, 846 F.2d 241, 243 (4th Cir.) (quoting *State v. Thorne*, 175 W. Va. 452, 454, 333 S.E.2d 817, 819, *cert. denied*, 474 U.S. 996 (1985)), *cert. denied*, 488 U.S. 984 (1988).

---

[4]*R.A.V. v. St. Paul*, 505 U.S. 377, 120 L. Ed. 2d 305, 112 S. Ct. 2538, 2545 (1992) did not change this result. Rather, the Court held that content discrimination limitations cannot be used to proscribe these forms of speech.

In recognition of the State's substantial interest in preventing telephone harassment, courts in other jurisdictions have upheld telephone harassment statutes against overbreadth challenges that are similar to RCW 9.61.230(1). *See People v. Taravella*, 133 Mich. App. 515, 518-22, 350 N.W.2d 780, 782-84 (1984) (upholding a statute that made it a misdemeanor to maliciously use a communications service "with intent to terrorize, frighten, intimidate, threaten, harass, molest or annoy any other . . . by [u]sing any vulgar, indecent, obscene or offensive language or suggesting any lewd or lascivious act in the course of a telephone conversation"); *State v. Hagen*, 27 Ariz. App. 722, 558 P.2d 750 (1976); *see also In re Simmons*, 24 N.C. App. 28, 30, 210 S.E.2d 84 (1974) (upholding a statute, *with no intent element*, that made it illegal to use words or language of a "profane, vulgar, lewd, lascivious or indecent character, nature or connotation" in a telephone conversation).

■ Because the statute primarily regulates conduct with minimal impact on speech, the implicated speech receives no or little constitutional protection, the restriction on protected speech is reasonable in light of the private forum, and the statute is viewpoint neutral, we conclude that RCW 9.61.230(1) is not unconstitutionally overbroad.[5]

Dyson next contends that RCW 9.61.230(2) is overbroad. In so arguing, he specifically focuses on calls made at an "extremely inconvenient hour" or made repeatedly with the intent to intimidate. To illustrate his point, Dyson argues that a call from a parent to his or her child at a late night party or repeated calls with the intent of inducing the child to come home would violate the statute.

■ We reject this argument. It is plain that RCW 9.61.230(2) regulates *pure* conduct without any speech compo-

---

[5]In so holding, we reject Dyson's contention that the statute is overbroad because it would prohibit those telephone calls to a spouse, public official, or customer complaint department in which swear words are used in order to persuade the recipient to do something. This argument ignores the fact that the intent element places the focus on the caller, rather than on the subjective perception of the listener. *Taravella*, at 521; *see also Huff*, 111 Wn.2d at 930. Thus, such telephone calls would not fall within the purview of the subsection unless the caller had the requisite intent.

nent. Because this subsection is aimed solely at conduct unprotected by the First Amendment — calling repeatedly or at an extremely inconvenient hour with the requisite intent, Dyson's examples would not fall within this subsection, and it cannot be held unconstitutionally overbroad. *See Wisconsin v. Mitchell*, 508 U.S. 476, 124 L. Ed. 2d 436, 113 S. Ct. 2194, 2200-01 (1993).[6]

## II
### Vagueness of RCW 9.61.230(2)

■ Dyson next contends that the phrase "extremely inconvenient hour", as used in RCW 9.61.230(2), is unconstitutionally vague. A statute is "void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Seattle v. Eze*, 111 Wn.2d 22, 26, 759 P.2d 366, 78 A.L.R.4th 1115 (1988) (quoting *O'Day v. King Cy.*, 109 Wn.2d 796, 810, 749 P.2d 142 (1988)). In Washington, vagueness is tested under the federal due process test, which requires that the statute provide: (1) adequate notice of the proscribed conduct and (2) adequate standards to prevent arbitrary enforcement. *Talley*, 122 Wn.2d at 212; *Eze*, 111 Wn.2d at 26.

■ The vagueness doctrine is subject to two limitations. First, a statute is presumed constitutional unless the party challenging it can prove its unconstitutionality beyond a reasonable doubt. *Eze*, 111 Wn.2d at 26; *Huff*, 111 Wn.2d at 928. Second, "impossible standards of specificity are not required". *Eze*, 111 Wn.2d at 26. In *Eze*, at 27, the court explained:

> [A] statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct. As this court has previously stated, "[I]f men of ordinary intel-

---

[6]We also reject Dyson's contention that because RCW 9.61.230(2) does not require a conversation to ensue, little or no harm is done if the call is "made late at night when no one is at home". Because the statute prohibits the making of repeated calls and the making of calls at an extremely inconvenient hour *with the requisite intent*, the focus is solely on the caller, not the subjective harm to the victim. *See Huff*, 111 Wn.2d at 930.

ligence can understand a penal statute, *notwithstanding some possible areas of disagreement*, it is not wanting in certainty."

Dyson argues that what constitutes an "extremely inconvenient hour" is necessarily vague because it is based on the victim's subjective reaction. The State responds, however, that the term "extremely" limits the subjectivity associated with "inconvenient".

As support, the State relies on *Eze*, where the court found that the phrase "unreasonably disturbs others", as used in a disorderly conduct ordinance, not unconstitutionally vague. *Eze*, at 28. In so holding, the court disagreed that the term "unreasonably" rendered the ordinance vague. "Indeed, use of that term provides additional indicia of objectivity, thereby rendering the statute less vague." *Eze*, at 29. The court noted that the term "unreasonable" removes "the possibility that a defendant's conduct may be measured by its effect upon those who are inordinately timorous or belligerent." *Eze*, at 29-30 (quoting *People v. Raby*, 40 Ill. 2d 392, 395, 240 N.E.2d 595 (1968), *cert. denied*, 393 U.S. 1083 (1969)); *see also Talley*, 122 Wn.2d at 213-14 (holding that "reasonable fear" was not unconstitutionally vague); *Everett ex rel. Cattle v. Everett Dist. Court*, 31 Wn. App. 319, 323, 641 P.2d 714 (1982) (holding that "unreasonably disturb" was not unconstitutionally vague).

We agree that the term "extremely", like the term "unreasonable", provides adequate standards by limiting the subjectivity associated with what might be considered inconvenient and ensures that the defendant's conduct is not measured by those who are overly or easily inconvenienced. Furthermore, adequate notice of the proscribed conduct is provided by viewing the challenged phrase in conjunction with the specific intent element. For instance, if the caller phones in the middle of the night not realizing the 3-hour time zone difference, the call would not fall within the conduct prohibited by the statute, notwithstanding the "extremely inconvenient hour". Conversely, if the caller phones the victim during the day, knowing that the victim sleeps during the day and works during the night, the caller has phoned at an "extremely inconvenient hour".

Because the requirement "extremely inconvenient hour" as used in RCW 9.61.230(2) provides adequate notice of the proscribed conduct and adequate standards to prevent arbitrary enforcement, we hold that it is not unconstitutionally vague.[7]

## III

### Alternative Means

Dyson contends that his conviction must be reversed because the jury was instructed that it could rely on the alternative means doctrine to convict Dyson of telephone harassment, yet the evidence was insufficient to prove each of the alternatives contained in RCW 9.61.230(2).

■ According to the alternative means doctrine, where a single offense may be committed in more than one way, jury unanimity is required only as to guilt. *State v. Kitchen*, 110 Wn.2d 403, 410, 756 P.2d 105 (1988). Jury unanimity is not required on each alternative so long as substantial evidence supports each method by which the single crime could have been committed. *Kitchen*, at 410; *State v. Bland*, 71 Wn. App. 345, 353, 860 P.2d 1046 (1993). On review, we must determine whether the jury "could have found each means of committing the crime proved beyond a reasonable doubt." (Italics omitted.) *Kitchen*, at 411.

Dyson specifically contends that the State failed to meet its burden under RCW 9.61.230(2) because there was insufficient evidence that he called anonymously. Relying on *Hartney v. State*, 823 S.W.2d 398 (Tex. Ct. App. 1992), Dyson argues that a call is "anonymous" only when the caller attempts to conceal his or her identity and because he made no attempts to conceal his identity, he did not call anonymously.

---

[7]We reject as meritless Dyson's equal protection challenge to RCW 9.61.230(2), which makes criminal those calls made at "an extremely inconvenient hour, whether or not conversation ensues". Apparently, it is Dyson's position that a call to an answering machine at an extremely inconvenient hour is different from a call to a person at an extremely inconvenient hour because an answering machine cannot be inconvenienced. However, the subsection raises no equal protection problem as *all* calls made at an inconvenient hour with the requisite intent *are treated the same* even if no conversation ensues.

We disagree. Although Dyson did not conceal his identity in some calls, the State presented evidence of multiple hang-up calls. Certainly by hanging up, the caller is attempting to conceal his or her identity. Thus, we conclude that the State presented sufficient evidence that Dyson called anonymously, and thus, the alternate means of committing telephone harassment found in RCW 9.61.230(2) was sufficiently proved.

## IV

### Multiple Acts

Finally, Dyson contends that he was denied his constitutional right to a unanimous jury verdict because the State failed to elect the specific act it relied on for his conviction and the trial court failed to give a *"Petrich"* instruction that the jury must agree that the same underlying criminal act has been proved beyond a reasonable doubt.

It is well settled that where the State relies on multiple acts that could form the basis for the one count charged, the State must elect the act it relies on for the conviction or the court must instruct the jury that it must agree that the same underlying criminal act has been proved beyond a reasonable doubt. *State v. Gooden*, 51 Wn. App. 615, 618, 754 P.2d 100, *review denied*, 111 Wn.2d 1012 (1988); *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984).

However, no election or instruction is required where a continuing course of conduct forms the basis for the one charge. *Gooden*, 51 Wn. App. at 618; *Petrich*, 101 Wn.2d at 571. To determine whether one continuing offense has occurred, the facts of the case must be analyzed with common sense. *Petrich*, at 571.

In this case, Dyson was charged with one count of telephone harassment. Although RCW 9.61.230 permits a conviction for a single call, RCW 9.61.230(2) also authorizes a conviction for a continuing course of conduct — repeatedly calling. There is no question that Dyson repeatedly called — Dyson made approximately 50 calls between January 8 and January 11, 1991, and approximately 15 calls between February 7 and February 8, 1991.

Thus, because the jury was instructed that it could rely on the alternative means doctrine to convict Dyson of one count of telephone harassment and there was sufficient proof that Dyson engaged in a continuing course of conduct by repeatedly calling, we conclude that the State was not required to elect the act that it relied on for the conviction nor was the court required to give a unanimity instruction.

Affirmed.

SCHOLFIELD and BECKER, JJ., concur.

Review denied at 125 Wn. 2d 1005 (1994).