IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON, | No. 82961-1-I |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| K.M.S.-M., | |
| Appellant. | |

BOWMAN, J. — K.M.S.-M. appeals her conviction for misdemeanor cyberstalking. She argues the cyberstalking statute is unconstitutionally overbroad and vague. And she challenges the sufficiency of the evidence supporting her conviction. We affirm.

FACTS

In April 2020, K.M.S.-M. and A.L., both juveniles, had an argument over social media. K.M.S.-M. then posted pictures on Snapchat[1] of A.L. "posing in a sexual manner" to " 'piss off' " A.L. A.L.'s mother said the pictures were "sexually inappropriate" and showed her daughter wearing only "a bra & underwear." K.M.S.-M. described the pictures of A.L. as " 'nudes' " and said they showed A.L. " 'sitting on the counter wearing bootie shorts and that was it.' " A friend of A.L.'s

___

[1] Snapchat is a social media app. Along with live video chatting, Snapchat allows users to send photographs, videos, and messages to their followers. Any picture, video, or message is available to the receiver for only a short time before it becomes unavailable.

This opinion bases the citations and pin cites on the Westlaw online version of the cited material.

saw the pictures on Snapchat and also described them as "nudes" or "private pictures."

The State charged K.M.S.-M. with one count of misdemeanor cyberstalking. K.M.S.-M. entered a diversion agreement under which the State would dismiss the charge if she participated in the "Way Out" program and wrote an apology letter to A.L. Under the agreement, K.M.S.-M. stipulated to the admissibility of the police reports should she "fail to successfully complete the diversion contract." The court would then determine her guilt based on "the police reports and other materials submitted by the prosecuting authority."

K.M.S.-M. did not complete diversion. So, the court held a diversion termination hearing, considered the police reports and witness statements in the record, and found K.M.S.-M. guilty of misdemeanor cyberstalking.

K.M.S.-M. appeals.

ANALYSIS

K.M.S.-M. argues the cyberstalking statute is unconstitutionally overbroad and vague. She also challenges the sufficiency of the evidence supporting her conviction.

Overbreadth

K.M.S.-M. says the cyberstalking statute under former RCW 9.61.260(1)(a) (2004)[2] is unconstitutionally overbroad. We review the

___

[2] The legislature recodified RCW 9.61.260 as RCW 9A.90.120 in 2022. LAWS OF 2022, ch. 231, § 4. Because the State charged K.M.S.-M. under the former statute, all citations in this opinion are to the 2004 version of RCW 9.61.260 that was in effect in 2020.

constitutionality of statutes de novo.  State v. Mireles, 16 Wn. App. 2d 641, 649, 482 P.3d 942, review denied, 198 Wn.2d 1018, 497 P.3d 373 (2021).

Both the federal and Washington constitutions protect the right to free speech.  U.S. CONST. amend. I; WASH. CONST. art. I, § 5.  Our overbreadth analysis under article I, section 5 of the Washington Constitution follows that of the First Amendment to the federal constitution.  Mireles, 16 Wn. App. 2d at 649.  A statute is overbroad under the Washington and federal constitutions if it unlawfully prohibits a substantial amount of protected speech.  Id.  In determining whether a statute is overbroad, we first consider whether the statute reaches a substantial amount of constitutionally protected speech.  Id.  If so, we then determine whether the constitution allows regulation of the protected speech.  Id.

The standard for regulating protected speech depends on the forum in which the speech occurs.  Mireles, 16 Wn. App. 2d at 649.  Speech in nonpublic forums may be regulated if the " 'distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint-neutral.' "  Id. at 650[3] (quoting City of Seattle v. Huff, 111 Wn.2d 923, 926, P.2d 572 (1989)).  Speech in public forums is subject to valid time, place, and manner restrictions that are " 'content-neutral, and narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.' "  Id. at 649-50[4] (quoting Huff, 111 Wn.2d at 926).

---

[3] Internal quotation marks omitted.

[4] Internal quotation marks omitted.

We will not overturn a "statute which regulates behavior, and not pure speech, . . . 'unless the overbreadth is both real and substantial in relation to the ordinance's plainly legitimate sweep.' " City of Seattle v. Webster, 115 Wn.2d 635, 641, 802 P.2d 1333 (1990)[5] (quoting Seattle v. Eze, 111 Wn.2d 22, 31, 759 P.2d 366 (1988)).  And even if a statute impermissibly regulates a substantial amount of protected speech, we will not overturn it unless we cannot place a sufficiently limiting construction on the statute.  Mireles, 16 Wn. App. 2d at 650.

RCW 9.61.260 reads, in pertinent part:

(1)  A person is guilty of cyberstalking if he or she, with intent to harass, intimidate, torment, or embarrass any other person, and under circumstances not constituting telephonic harassment, makes an electronic communication to such other person or a third party:
    (a)  Using any lewd, lascivious, indecent, or obscene words, images, or language, or suggesting the commission of any lewd or lascivious act;
    . . . .
    (5)  For the purposes of this section, "electronic communication" means the transmission of information by wire, radio, optical cable, electromagnetic, or other similar means. "Electronic communication" includes, but is not limited to, electronic mail, [I]nternet-based communications, pager service, and electronic text messaging.

We recently considered whether RCW 9.61.260(1)(a) is unconstitutionally overbroad in Mireles.  In that case, we recognized that the language of the cyberstalking statute mirrors the telephone harassment statute.  Mireles, 16 Wn. App. 2d at 650.  That statute reads, in pertinent part:

(1)  Every person who, with intent to harass, intimidate, torment, or embarrass any other person, shall make a telephone call to such other person:

---

[5] Internal quotation marks omitted.

(a) Using any lewd, lascivious, profane, indecent, or obscene words or language, or suggesting the commission of any lewd or lascivious act . . .

. . . .

is guilty of [telephone harassment].

RCW 9.61.230.

The language of the telephone harassment statute withstood constitutional scrutiny in State v. Dyson, 74 Wn. App. 237, 872 P.2d 1115, review denied, 125 Wn.2d 1005, 886 P.2d 1133 (1994). In Dyson, we concluded that although the telephone harassment statute "contains a speech component," it is

clearly directed against specific conduct—making telephone calls with the intent to harass, intimidate, or torment another while using lewd, lascivious, profane, indecent, or obscene words or language, or suggesting the commission of any lewd or lascivious act.

Id. at 243. So, the telephone harassment statute constitutionally regulates "conduct implicating speech," not speech itself. Id.; see also State v. Talley, 122 Wn.2d 192, 210-11, 858 P.2d 217 (1993) (upholding a subsection of the malicious harassment statute against an overbreadth challenge because it primarily regulated conduct, and its "incidental impact" on speech was minimal); Virginia v. Black, 538 U.S. 343, 363-65, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003) (cross burning may be proscribed with intent to intimidate, but cross burning without additional proof of the requisite intent to intimidate may not be proscribed).

Relying on Dyson, Talley, and Black, we determined in Mireles that even though the cyberstalking statute impacts speech in public forums, the intent requirement of the statute "sufficiently limits the statute's reach to conduct" such that it does not prohibit a substantial amount of protected speech. Mireles, 16

5

Wn. App. 2d at 653-54.[6] The statute "punishes not the content of speech but, rather, the selection of a victim and directing the speech in such a way as to cause a specific harm to them." Id. at 655. As a result, we concluded that RCW 9.61.260(1)(a) was not unconstitutionally overbroad. See Id. at 655-56.

K.M.S.-M. argues that Mireles "did not go far enough." She says we inaptly compared the cyberstalking statute to the telephone harassment statute because RCW 9.61.260(1)(a) regulates "speech and only speech," whereas the "core conduct the telephone harassment statute criminalizes—'mak[ing] a telephone call'—is not speech."[7] Indeed, according to K.M.S.-M., "a person can commit telephone harassment without speaking at all." But in support of her argument, K.M.S.-M. cites to subsection (1)(b) of the telephone harassment statute, which prohibits calls made "[a]nonymously or repeatedly or at an extremely inconvenient hour, whether or not conversation ensues." RCW 9.61.230. And it is subsection (1)(a) of the telephone harassment statute proscribing calls made with the intent to harass, intimidate, or torment that Mireles found to be analogous to the cyberstalking statute. 16 Wn. App. 2d at 653; RCW 9.61.230.

K.M.S.-M. also argues that Mireles interprets too broadly our Supreme Court's holding in Talley. According to K.M.S.-M., the malicious harassment statute at issue in Talley survived constitutional scrutiny only because it punished

---

[6] Still, we struck the term "embarrass" from RCW 9.61.260(1), concluding that such a broad term does sweep "a substantial amount of protected speech within reach of the statute." Id. at 654-55.

[7] Quoting RCW 9.61.230(1) (alteration in original).

selecting a victim based on race, color, religion, or "other prohibited grounds." K.M.S.-M. claims speech "enters the equation only as evidence of the defendant's discriminatory intent." But the court's holding in Talley was not so narrow. The court held the malicious harassment statute was not constitutionally overbroad because it punishes conduct. Talley, 122 Wn.2d at 204. The statute does not proscribe "thought or belief, but rather victim selection." Id. This "tight nexus between criminal conduct" and the statute protects "free speech guaranties." Id. Like the malicious harassment statute in Talley, the cyberstalking statute does not punish speech. Rather, it punishes criminal conduct—selecting a victim and using electronic communication to harass, intimidate, or torment that person. RCW 9.61.260(1).

Finally, K.M.S.-M. contends Mireles mistakenly suggests that the United States Supreme Court in Black held that " 'a mens rea of evil intent' can make 'otherwise protected speech unprotected by the First Amendment.' "[8] K.M.S.-M. is correct that Black does not stand for the proposition that "evil intent" can convert speech from protected to unprotected. Still, the Court in Black held that Virginia's cross-burning statute "does not run afoul of the First Amendment insofar as it bans cross burning with intent to intimidate." Black, 538 U.S at 362. That holding aligns with our conclusion in Mireles that "the intent requirement of the cyberstalking statute sufficiently limits the statute's reach to conduct." Mireles, 16 Wn. App. 2d at 654.

---

[8] Quoting Mireles, 16 Wn. App. 2d at 653.

K.M.S.-M. articulates no compelling reason for us to deviate from our holding in Mireles. As a result, we conclude that RCW 9.61.260(1)(a) is not overbroad.

Vagueness

K.M.S.-M. argues the cyberstalking statute is unconstitutionally vague. We disagree.

The due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution require that statues afford citizens a fair warning of prohibited conduct. State v. Murray, 190 Wn.2d 727, 736, 416 P.3d 1225 (2018). In Washington, we review vagueness claims under the federal due process test, which requires that the statute provide (1) adequate notice of the proscribed conduct and (2) adequate standards to prevent arbitrary enforcement. Dyson, 74 Wn. App. at 246. We presume statutes constitutional unless the party challenging it can prove its unconstitutionality beyond a reasonable doubt. Id.

A statute "is 'void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.' " Eze, 111 Wn.2d at 26 (quoting O'Day v. King County, 109 Wn.2d 796, 810, 749 P.2d 142 (1988)). But a statute is not unconstitutionally vague just because it fails to define some terms; we attribute to those terms their plain and ordinary dictionary definitions. In re Pers. Restraint of Troupe, 4 Wn. App. 2d 715, 723, 423 P.3d 878 (2018). And we do not require " 'impossible standards of specificity.' " Dyson, 74 Wn. App. at 246 (quoting Eze, 111 Wn.2d at 26). That is, " '[a] statute is not unconstitutionally vague merely because a

person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct.' " Id. (quoting Eze, 111 Wn.2d at 27). If persons " 'of ordinary intelligence can understand a penal statute, notwithstanding some possible areas of disagreement, it is not wanting in certainty.' " Id. at 246-47 (quoting Eze, 111 Wn.2d at 27). For a statute to be unconstitutionally vague, its terms must be so loose and obscure that no one can apply them clearly in any context. State v. Alphonse, 147 Wn. App. 891, 907, 197 P.3d 1211 (2008).

K.M.S.-M. argues that the "lewd, lascivious, indecent, or obscene" language of the cyberstalking statute[9] "provides no notice of what kinds of content make a communication lewd, lascivious, or obscene, and it provides no standards to guide law enforcement." She also argues that "the statute does not identify a standard by which to judge whether a communication includes 'indecent' speech."

We have already considered and upheld the language K.M.S.-M. challenges in Alphonse. There, a jury convicted the defendant of both felony and misdemeanor telephone harassment. Alphonse, 147 Wn. App. at 897-98. The defendant argued that the language of RCW 9.61.230(1)(a) was vague because "he must guess whether his use of certain words is 'indecent,' 'lewd,' or 'lascivious,' " and "some of the words he used may be deemed by some to be 'indecent,' 'lewd' or 'lascivious,' but may be commonly used by others." Alphonse, 147 Wn. App. at 907-08.

---

[9] RCW 9.61.260(1)(a).

We noted that both the United States Supreme Court and the Washington Supreme Court "have held that the word 'obscene' is not unconstitutionally vague," and that "[o]ur courts have also commonly defined the terms 'indecent' and 'obscene.'" Alphonse, 147 Wn. App. at 907-08. We rejected the defendant's argument, holding that common use of offensive language is not equivalent to ignorance of its offensive nature. Id. at 908. And we concluded that the statute's specific intent element serves to further dispel any vagueness concerns, including limiting the amount of protected speech that "will be subject to an inordinate amount of police discretion when the State may charge only those complaints that are made with criminal intent." Id. at 908-09.

Under Alphonse, the standard of what amounts to lewd, lascivious, indecent, or obscene language is not so obscure that persons of common intelligence must guess at its meaning or differ in its application. Nor does the language lack adequate standards to prevent arbitrary enforcement by law enforcement.

K.M.S.-M. argues Alphonse is not analogous because "[u]nlike the cyberstalking statute, the telephone harassment statute does not proscribe pure speech." But, as explained above, the cyberstalking statute proscribes conduct, not speech. We conclude that RCW 9.61.260(1)(a) is not unconstitutionally vague.

Sufficiency of the Evidence

K.M.S.-M. also challenges the sufficiency of the evidence supporting her cyberstalking conviction. She argues that there is insufficient evidence showing her posts were lewd, lascivious, indecent, or obscene.[10]

Sufficiency of the evidence is a question of law we review de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). Evidence is sufficient to support a conviction if any rational trier of fact can find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency of the evidence admits the truth of the State's evidence and all inferences that we can reasonably draw from it, so we draw all reasonable inferences from the evidence in favor of the State and against the defendant. Id. And we consider circumstantial and direct evidence equally reliable. State v. Cardenas-Flores, 189 Wn.2d 243, 266, 401 P.3d 19 (2017). But we defer to the fact finder on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. State v. Rodriquez, 187 Wn. App. 922, 930, 352 P.3d 200 (2015).

To prove misdemeanor cyberstalking, the State had to show:

That [K.M.S.-M.], on or about the 17th day of April, 2020, with intent to harass, intimidate, [or] torment . . . [A.L.], did make an electronic communication to that person or a third party using lewd,

---

[10] K.S. also argues that because the statute proscribes a substantial amount of speech, the State must show that her speech was unprotected under the First Amendment, i.e., that it amounts to obscenity or child pornography. But, as discussed above, the cyberstalking statute does not proscribe a substantial amount of speech. It proscribes the conduct of using electronic communications to harass or intimidate another.

> lascivious, indecent, or obscene words, images, and language, or suggesting the commission of a lewd and lascivious act.

See RCW 9.61.260(1)(a), (2).

As an initial matter, the State argues that "considering the stipulated nature of the bench trial," K.M.S.-M. waived her challenge to the sufficiency of the evidence under the invited error doctrine. The invited error doctrine prohibits a party from setting up an error at trial and then challenging that error on appeal. In re Pers. Restraint of Coggin, 182 Wn.2d 115, 119, 340 P.3d 810 (2014). To determine whether a party invited error, we consider whether they affirmatively assented to the error, materially contributed to it, or benefited from it. Id. The party inviting error must do so knowingly and voluntarily. State v. Mercado, 181 Wn. App. 624, 630, 326 P.3d 154 (2014). And the party asserting invited error has the burden of proof. State v. Thomas, 150 Wn.2d 821, 844, 83 P.3d 970, abrogated on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

Citing State v. Ellison, 172 Wn. App. 710, 291 P.3d 921 (2013), the State contends the invited error doctrine bars K.M.S.-M. from challenging her stipulated facts. In Ellison, the defendant stipulated to the trial court's CrR 3.6 findings that police were responding to a " 'domestic violence/unwanted person call' " and that he had " 'possession and control' " of a backpack at the time of his arrest. Id. at 715. The defendant then argued that the trial court's findings should not be binding on appeal. Id. Division Two of our court held that because the defendant stipulated to the findings of fact, he was precluded from challenging them on appeal under the invited error doctrine. Id. Unlike the defendant in

12

Ellison, K.M.S.-M. did not stipulate to findings of fact. Instead, she agreed to "submit the case on the record," which entailed stipulating to only the admissibility of "police reports and other materials submitted by the prosecuting authority." She agreed that if she failed to successfully complete diversion, the judge would read those materials "at the time of the termination hearing and, based solely upon that evidence, . . . decide if [she is] guilty or not guilty of the crime(s) charged." Invited error does not bar K.M.S.-M. from challenging the sufficiency of the evidence contained in those documents.

Even so, we reject K.M.S.-M.'s argument that insufficient evidence showed her posts were lewd, lascivious, indecent, or obscene. A.L. was 15 years old when K.M.S.-M. posted the photos. A.L. said that K.M.S.-M. "has had the photos for approximately one year," which suggests A.L. was 14 years old or younger when she took them. A.L.'s mother described the photos as "sexually inappropriate" and showed A.L. "in a bra & underwear." K.M.S.-M. described the photos as " 'nudes' " that showed A.L. " 'sitting on the counter wearing bootie shorts and that was it.' " And Arlington Police Detective Stephanie Ambrose reported that the photos showed A.L. "posing in a sexual manner."[11]

A rational trier of fact viewing the evidence in a light most favorable to the State could find that the pictures K.M.S.-M. posted were lewd, lascivious,

---

[11] K.S. objects to Detective Ambrose's description as a "conclusory opinion." But Detective Ambrose did not offer the statement as her opinion. Rather, she says that another detective assigned her the case, that she "reviewed the case," and that she "read that victim [A.L.] . . . had taken photographs of her[self] posing in a sexual manner."

indecent, or obscene.  Sufficient evidence supports the trial court's conclusion that K.M.S.-M. committed the crime of misdemeanor cyberstalking.

K.M.S.-M. fails to show that the cyberstalking statute is unconstitutionally overbroad or vague.  And sufficient evidence supports her conviction.  We affirm.

_____, J

WE CONCUR:

_____        _____